NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> DANIEL RIVERA, <br><br> Defendant. | Criminal Action No. 18-00443 (GC) <br><br> **MEMORANDUM OPINION** |

**CASTNER, District Judge**

  **THIS MATTER** comes before the Court upon the Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (the "First Step Act") filed by Defendant Daniel Rivera and supplemented by the federal public defender's office. (ECF Nos. 33 & 42.)  The United States of America (the "Government") opposed the motion, and Defendant replied.  (ECF Nos. 43, 45, 46.) The Court has carefully considered the submissions and decides the matter without oral argument under Local Civil Rule 78.1(b), which applies to criminal cases pursuant to Local Criminal Rule 1.1.  For the reasons stated herein, and other good cause shown, the motion is **DENIED** without prejudice.

**I. BACKGROUND**

  **A. T**HE **O**FFENSES

  On November 14, 2019, Rivera pled guilty to a two-count Superseding Information that charged him with (1) wire fraud, in violation of 18 U.S.C. § 1343, and (2) aiding and abetting in the false subscribing to a tax return for the 2013 tax year, in violation of 26 U.S.C. § 7206(1). (ECF No. 25.)  Rivera had been arrested in August 2018 after operating a fraudulent scheme from

about 2008 through 2017 that solicited from over 30 investors approximately $2.7 million for investment in a phony real estate fund that Rivera created. (*See generally* ECF No. 28.) Rivera diverted a portion of the investors' funds to himself each month and failed to report the diverted income on his 2013 tax return, which led Rivera to substantially understate the income that he earned. (*Id.* at 11.[1])

On April 30, 2021, the Court (Thompson, J.) sentenced Rivera to a term of imprisonment of 78 months on the wire fraud count and 36 months on the subscribing to a false tax return count to be served concurrently for a total term of imprisonment of 78 months (six-and-a-half years). (ECF No. 32.) Rivera, who is now 53 years old, is incarcerated at the Federal Correctional Institution ("FCI") at Fort Dix, New Jersey, and according to the BOP's website has a projected release date of December 25, 2025. *See* WEBSITE OF THE FEDERAL BUREAU OF PRISONS, *Find an inmate*, https://www.bop.gov/inmateloc/ (last visited August 30, 2023).

### B. MOTION FOR COMPASSIONATE RELEASE

On October 28, 2022, Rivera *pro se* filed a motion for compassionate release, asking the Court to reduce his sentence based on the need for someone to care for Rivera's autistic, adult son. (ECF No. 33.) Rivera submits a psychological evaluation report to demonstrate the "serious mental and health conditions and the need for around the clock supervision and care" for his son.[2] (*Id.* at 1.) Rivera argues that this combined with the child's mother's "own mental health issues" that make it difficult for her "to take on the added responsibility of providing adequate care" create

---

[1] Citations to page numbers within record documents (*i.e.*, "ECF No.") refer to the page numbers stamped on the documents by the Court's e-filing system.

[2] The report from the clinical neuropsychologist at Lifespan Neuropsychology & Counseling Center, LLC, describes developmental delays, behavioral observations, intellectual functioning, adaptive functioning, and behavioral functioning of Rivera's son. (ECF No. 33 at 15-21.)

"exceptional and compelling reasons" for Rivera's release.³  (*Id.*)

Rivera explains that he has three children, two living with their mother and the third living with one of Rivera's brothers.  (*Id.* at 3.)  The child living with Rivera's brother is a 28-year-old man with autism and other developmental disabilities who has struggled with obesity, alleged drug use, and depression, among other issues.  (*Id.* at 3-4.)  Because Rivera's brother is employed and unable to provide around-the-clock supervision and care, Rivera asks that he be released to care for his son.  (*Id.* at 4-7.)  Rivera's brother provided a letter in support of the motion that states that the brother believes he is "failing desperately as a caretaker" and that caring for Rivera's son is "a laborious task . . . and more than [he] can handle on [his] own."  (*Id.* at 12.)  The brother writes that his job requires him to leave on Monday mornings and to travel for work, often not returning home until Friday evenings.  (*Id.*)  The brother also notes that Rivera's son has, among other things, gained more than seventy-five pounds and been arrested.  (*Id.*)

On January 25, 2023, the federal public defender's office filed a supplemental motion for compassionate release on Rivera's behalf, emphasizing that Rivera's brother is in an untenable position made worse by the fact that the brother not only takes care of Rivera's son but also is taking care of his mother who has Parkinson's disease.  (ECF No. 42-3 at 1.)  The supplemental motion argues that "even if a child has other family support, a court may still grant compassionate release to bring a parent home where the strain of parenting is too much on other caregivers" and extraordinary and compelling reasons can extend beyond minor children and "include hardship borne by caretaker relatives in a defendant's absence."  (*Id.* at 13-14 (collecting cases).)  Pointing

---

³  Documentation supports the conclusion that the mother has mental health needs.  (ECF No. 42-4 at 25-28.)

to then-proposed amendments to the U.S. Sentencing Commission's guidelines,[4] the supplemental motion contends that the need to protect Rivera's son warrants "convert[ing] [Rivera's] imprisonment to a term of special supervised released with the condition of home confinement."[5] (*Id.* at 2.) It also contends that "the 3553(a) factors . . . warrant relief" because "Rivera can immediately begin to work and repay his victims." (*Id.* at 2, 16-21.)

Included with the supplemental submission were letters from a daughter of Rivera's that states that she is unable to provide care for her brother because she is a head teacher in a school for students with autism and the full-time job is "very mentally and emotionally demanding," especially when she is simultaneously pursuing a master's degree in special education. (ECF No. 42-4 at 9.) There is also documentary evidence confirming that Rivera's son has been in major car accidents and is suffering from depression. (*Id.* at 29-32.) Finally, the supplemental motion underscores that Rivera's "post-sentencing conduct includes significant work at the Bureau of Prisons, including off-site assignment," and Rivera "travels freely through Fort Dix to do any

---

[4] The Sentencing Commission's amendments to the guidelines, submitted to Congress in April 2023 with an effective of November 1, 2023, "expand[] the existing provision relating to the death or incapacitation of the caregiver of a defendant's minor child to include a child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition. This expansion reflects the Commission's determination that providing care for a non-minor child with severe caretaking needs presents a circumstance similar to providing care for a minor child, as some courts have recognized." WEBSITE OF THE UNITED STATES SENTENCING COMMISSION, *Amendments to the Sentencing Guidelines, dated April 27, 2023,* https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 (last visited August 30, 2023).

[5] In opposition, the Government argues that the request to convert the sentence to home confinement falls outside a district court's limited authority to reduce the term of imprisonment when deciding a Section 3582(c) motion. (ECF No. 43 at 3 n.1.) On reply, the federal defender's office wrote that it was not seeking to have the sentence converted but asking that the sentence be reduced "to a special term of supervised release for the remaining portion of his sentence of imprisonment with the restrictive condition of home confinement." (ECF No. 45 at 6.) Because the motion is being denied, the Court does not discuss the issue.

landscaping roles necessary" and "also travels . . . to FDC Philadelphia to perform maintenance at the Federal Detention Center." (ECF No. 42-3 at 16-17.)

On January 30, 2023, the Government opposed Rivera's application for compassionate release. (ECF No. 43.) It maintains that the motion should be denied because Rivera's "adult son's needs are not extraordinary or compelling reasons to reduce Rivera's sentence and because the balance of sentencing factors under 18 U.S.C. § 3553 strongly favor Rivera [continuing to be imprisoned] for a predatory Ponzi scheme that . . . shattered the lives of . . . victim investors." (*Id.* at 1.) The Government describes the various persons injured by Rivera's criminal actions, including one instance when "Rivera encouraged an investor to take a mortgage on her home in order to invest over $300,000 in his fraud" and another instance when Rivera took "$80,000 from a registered nurse who worked 40 years to save it." (*Id.* at 2, 6.) The Government writes that, "[s]adly, family members of incarcerated individuals commonly face unintentional harsh consequences, but Rivera must show far more than difficulty in order to be eligible for relief." (*Id.* at 5.) The Government insists that "[w]hile [Rivera's] brother . . . may have competing priorities with work, those circumstances are a far cry from incapacitation" and "[i]n addition to the availability of adult care facilities," there may be other adults to assist with caregiving. (*Id.*)

On February 14, 2023, Rivera replied (through counsel), citing data and arguing that the Court should not interpret "extraordinary" to mean "rare." (ECF No. 45 at 1-3.) Rivera writes that nothing requires him to show that his son's caregiver is now deceased or incapacitated, and the Court "should reject the government's scattershot identification of any other adult to care" for Rivera's son, "or even an adult care facility, as unreasonable." (*Id.* at 4-5.) Rivera submits that he understands his "offense was serious and broke the trust and security of vulnerable people," but

5

it "does not singularly define" him and "[h]e is a devoted father" committed to making right for his wrongful actions.  (*Id.* at 5.)

On August 18, 2023, the public defender's office filed a further update with the Court on Rivera's behalf.  (ECF No. 46.)  The submission emphasizes that the percentage of the sentence that Rivera has served increased as a result of the passage of time as well as the receipt of "Earned Time Credits."  (*Id.* at 1-2.)  It also includes several positive reports from staff at the Bureau of Prisons cited for "the position that . . . Rivera is highly functional and could provide for his son and mother while also working to repay his victims."  (*Id.* at 2-3.)  Finally, the submission provides an update on Rivera's son, noting that he had been in a fourth car accident in June 2023, is prone to break things around the house, and that Rivera's brother is overwhelmed having to take care of the son as well as the elderly mother.  (*Id.* at 3-4.)

## II.     LEGAL BACKGROUND

Although a district court generally has limited authority to modify a federally imposed sentence once it commences, *see, e.g.*, *Dillon v. United States*, 560 U.S. 817, 824 (2010) (noting that a sentence of imprisonment "may not be modified by a district court except in limited circumstances"), the First Step Act permits courts to grant compassionate release when there are "extraordinary and compelling reasons" to reduce a sentence.  18 U.S.C. § 3582(c)(1)(A).

The Act was passed in December 2018, *see* Pub. L. No. 115-391, 132 Stat. 5194 (2018), and, in relevant part, it provides:

> (A) [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved

>portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>>(i) extraordinary and compelling reasons warrant such a reduction . . . .

[18 U.S.C. § 3582(c)(1)(A).]

Once the procedural prerequisites are satisfied, a district court may reduce a defendant's sentence "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[6] and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Burd*, Crim. No. 21-86, 2023 WL 3271167, at *1 (D.N.J. May 5, 2023) (quoting *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020), *aff'd*, 837 F. App'x 932 (3d Cir. 2021)).

### III. DISCUSSION

#### A. PROCEDURAL PREREQUISITES

The procedural prerequisites for judicial review of compassionate release motions are relatively straightforward. Before making such requests to the sentencing court, "the defendant must fully exhaust administrative remedies within the [Bureau of Prisons] or wait 30 days from the date the facility's warden receives defendant's request, whichever happens first." *United States v. Alston*, Crim. No. 03-844, 2023 WL 2238297, at *2 (D.N.J. Feb. 27, 2023) (citing 18 U.S.C. § 3582(c)(1)(A)).

---

[6] The Sentencing Commission's U.S. Sentencing Guidelines ("U.S.S.G.") policy statement is not binding on district courts, but "it still sheds light on the meaning of extraordinary and compelling reasons." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021).

7

On July 15, 2022, Rivera filed a request for compassionate release with the warden at FCI Fort Dix, which was denied more than 30 days later on August 17, 2022. (ECF No. 33 at 8-11.) Because more than 30 days passed between Rivera submitting the request to the warden and filing the present motion, the First Step Act's exhaustion requirements were satisfied. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) ("[T]he statute states that the defendant may file the motion thirty days after the warden receives his request.").

### B. COMPASSIONATE RELEASE

The First Step Act does not define "extraordinary and compelling reasons," which means that district courts have some "flexibility and discretion to consider the unique circumstances" for each compassionate release motion. *United States v. Doolittle*, Crim. No. 19-501, 2020 WL 4188160, at *2 (D.N.J. July 21, 2020) (citing *United States v. Rodriguez*, 451 F. Supp. 3d 392, 398-99 (E.D. Pa. 2020)). When giving shape to this "otherwise amorphous phrase," courts may look to the statute's "text, dictionary definitions, and the policy statement" of the U.S. Sentencing Commission. *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021).

In *Andrews*, the district court (affirmed on appeal) explained that "[t]he ordinary meaning of extraordinary is '[b]eyond what is usual, customary, regular, or common.' And the ordinary meaning of compelling need is '[a] need so great that irreparable harm or injustice would result if it is not met.'" *United States v. Andrews*, 480 F. Supp. 3d 669, 682-83 (E.D. Pa. 2020) (first quoting *Extraordinary*, Black's Law Dictionary (10th ed. 2014); and then quoting *Compelling Need*, Black's Law Dictionary (10th ed. 2014)).

Commentary to the Sentencing Commission's policy statement provides, in relevant part, that extraordinary and compelling reasons exist for "family circumstances" when there is "death or incapacitation of the caregiver of the defendant's minor child or minor children." U.S.S.G. §

8

1B1.13, cmt. n.1(C)(i). The parties note that the Sentencing Commission has revised its policy statement, effective November 1, 2023, to include not just minor children but also "a defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition." (ECF No. 42-3 at 15.)

As summarized above, Rivera argues that his unique family circumstances, namely, his adult, autistic son's need for care and Rivera's brother's difficulties doing so, rise to the level of an extraordinary and compelling reason warranting Rivera's release. On the record presented, the Court believes that the circumstances may reach the level required for an extraordinary and compelling reason, but even if found, the § 3553(a) factors strongly disfavor release at this time.

The Court is sympathetic to the challenges faced by Rivera's son and brother and appreciates that Rivera regrets being unable to provide care as his son struggles with substantial weight gain, multiple car accidents, depression, and other challenges. Nevertheless, the unfortunate reality is that "[i]t is not uncommon . . . for a criminal sentence to impose burdens, sometimes severe ones, on family members." *United States v. Dunich-Kolb*, No. CR 14-150 (KM), 2022 WL 580919, at *8 (D.N.J. Feb. 14, 2022) (McNulty, J.). A defendant who engages in the kind of serious criminal activity that Rivera did in this case (defrauding dozens of individual investors, some of their life savings) while knowing that he has family members who might suffer by his absence cannot then claim that he should have a reduced sentence because of the foreseeable burdens placed on the defendant's family members as a result of the defendant's knowing actions. At this stage, compassionate release requires more than a belief that a child would be better served by the defendant's presence than by his absence; there ordinarily must be a demonstration that an irreparable harm or injustice will result unless defendant is released. *See United States v. Claude*, 504 F. Supp. 3d 460, 462 (E.D. Pa. 2020), *aff'd*, 16 F.4th 422 (3d Cir. 2021) ("[A] 'compelling

need' is a 'need so great that irreparable harm or injustice would result if it is not met.'" (citation omitted)).

Here, accepting that a district court may grant compassionate release to allow a defendant, under the appropriate circumstances, to care for an adult child with a serious mental or physical disability, there is evidence presented that supports finding that Rivera's brother, who has represented that he must travel during the work week and cannot be regularly present, is unable to singlehandedly provide the constant care Rivera's son needs, in addition to the care for Rivera's mother. The medical evaluation from a clinical neuropsychologist dated December 2020 finds that, "[b]ased on . . . test results, [the son] is able to be left unsupervised for short amounts of time, but requires assistance or supervision for financial, legal, medical, and household related matters." (ECF No. 33 at 19.) Rivera's brother's job, which requires him to be away for extended periods, is incompatible with the medical recommendation that Rivera's son should be assisted with household related matters and be left unsupervised for only "short amounts of time." As a seeming result, and detailed above, Rivera's son has been doing poorly.

That said, and as the Government points out, while some of Rivera's family members have written to state that their professional and personal lives make it difficult to assume full responsibility for Rivera's son, they do not explain why they are entirely unable to ease the burden on Rivera's brother by assisting on at least a semi-regular basis. (*See, e.g.*, ECF No. 33 at 13 (Santos Rivera: "With all going on in my immediate family and working lifestyle, I am not a qualifying member to be giving the assistance that [he] needs on a daily basis."); at 14 (Stephanie Rivera: "Due to my current lifestyle, I am unable to ensure that my brother is given the best assistance that he deserves and needs for stable daily functioning.").) Further, if released, Rivera (like his own brother) may at some point have to balance the burden of full-time employment and

10

the care of other family members alongside the care of his son. It is not promised that Rivera would be able to be present as needed either.[7]

Ultimately, even if these circumstances rise to an extraordinary and compelling level, the Court finds that the § 3553(a) factors weigh strongly against Rivera's release at this time. Under 18 U.S.C. § 3553(a), a court must impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing, including the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," afford adequate deterrence, protect the public from additional crimes by the defendant, and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D). A court must also consider the "nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," among other factors. *Id.* § 3553(a)(1), (6); *see also United States v. Tapia*, Crim. No. 23-1811, 2023 WL 4575946, at *2 (3d Cir. July 18, 2023) ("A district court 'may reduce the term of imprisonment' and 'impose a term of probation or supervised release' if it finds that 'extraordinary and compelling reasons warrant such a reduction.' Before granting such relief, a district court must consider the sentencing factors in § 3553(a)." (quoting 18 U.S.C. § 3582(c)(1)(A)(i))).

Here, Rivera's criminal actions are extraordinarily serious in nature. To promote respect for the law, provide just punishment, and afford adequate deterrence for the offenses requires

---

[7] Indeed, one of the arguments Rivera advances as to why he should be granted early release is that "he intends to work hard so his former clients can meet their monthly expenses." (ECF No. 42-3 at 19.)

11

ensuring that Rivera serve the greater part of his sentence.[8] *See United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (affirming denial of compassionate release in bribery and fraud case where district court determined that the defendant's time served did not weigh in favor of release); *United States v. Doe*, 833 F. App'x 366, 368 (3d Cir. 2020) ("[T]he District Court did not abuse its discretion in assessing the seriousness of Doe's offense of conviction."); *United States v. Neff*, 523 F. Supp. 3d 726, 729 (E.D. Pa. 2021) ("Given the seriousness of the offenses of conviction, Defendant's release, with less than fifty percent of his sentence served, would not reflect the seriousness of the offenses, promote respect for the law, or provide just punishment for the offenses.").

As detailed in the Superseding Information to which he pled guilty, Rivera preyed on the aspirations of individuals, "elderly investors and others," by devising a scheme to enrich himself by inducing "senior investors" and other victims to invest their hard-earned monies in Rivera's fraudulent company. (ECF No. 21 at 2-5.) Rivera produced fake brochures and met with individuals in their homes and elsewhere to "encourage[] some of them to invest . . . by transferring their retirement savings or other funds" to his control. (*Id.*) As of April 2021, many of the victims had lost tens of thousands dollars, some far more than a hundred thousand dollars, due to Rivera's actions, and several of them provided impact statements before Rivera's sentencing describing how their financial losses had upended their lives and deprived them of the resources they had

---

[8] Rivera self-surrendered on June 8, 2021, and has served approximately twenty-six months of the 78-month sentence, or 33 percent of his sentence. The public defender's office encourages the Court to calculate the length of sentence served based on the expected release date, which accounts for earned time credits. (ECF No. 46 at 1-2.) Under this latter calculation, Rivera has served approximately 48 percent of his sentence of imprisonment. Whether 33 or 48 percent, the Court would reach the same conclusion. *See United States v. Canzater*, Crim. No. 18-578, 2022 WL 1602163, at *10 (D.N.J. May 20, 2022) ("Release at the present time, however, would unacceptably undercut nearly all of the goals of sentencing as set forth in § 3553(a).").

worked hard to save for retirement.  (ECF No. 28 at 11-15.)

Another district court in this Circuit has persuasively explained that a lengthy sentence in such a case is necessary because "in cases involving white collar crimes, such as this one, a sophisticated individual's understanding of the likelihood of apprehension and length of punishment is an important component of a putative offender's calculus on whether to commit the crimes."  *Neff*, 523 F. Supp. 3d at 729; *see also United States v. Bernard*, Crim. No. 14-710, 2020 WL 6689798, at *5 (D.N.J. Nov. 12, 2020) (denying motion for compassionate release where defendant secured public work for contractors in exchange for kickbacks of approximately $1 million and defendant had "served less than 50% of the sentence, which factors against his request").

And though the Court accepts that Rivera has acted positively while incarcerated, given the sophisticated and predatory nature of his crimes, the Court concludes that he poses some risk to the public because of his potential to aid in new fraudulent schemes and to target vulnerable persons (particularly the elderly) upon release.  *See* 18 U.S.C. § 3553(a)(2)(C).

Finally, the judicial orders and opinions cited by Rivera in support of his motion do not convince the Court otherwise.  In *United States v. Gore*, for example, Judge Sheridan granted the defendant's second request for compassionate release when the defendant had served 75 percent of his sentence (more than Rivera) and the mother of defendant's three children, including a 13-year-old, had died and the grandmother had "health conditions associated with COVID-19, and tendinitis which prevent[ed] her from working and driving."  Crim. No. 10-00250, ECF No. 52.  Judge Sheridan was "most concerned" with the care of the minor child, and wrote that the loss of the mother was "a tragic event," and the children needed "consolation, direction, and hopefully, financial support" that could be provided by the defendant.  *Id.*  Similarly, in *United States v.*

*Frankie Taylor*, Chief Judge Wolfson granted the defendant's motion for reconsideration of an earlier denial of compassionate release when the defendant had served more than 75 percent of his sentence and the defendant's parents, who had been responsible for the defendant's six-year-old daughter, had "ailing health [that] impacted their caretaking abilities" and it was evident that release was needed to "alleviate the caretaking pressures on Defendant's parents." Crim. No. 11-00452, ECF No. 526.

Here, by contrast with the above examples, there is no evidence that Rivera's brother's health is failing, Rivera's son is not a minor, and Rivera has not even served 50 percent of his 78-month sentence. Instead, this case more closely resembles *United States v. Woods*, in which the district court found that even if the defendant's need to care for her 18-year-old, autistic son rose to the level of an extraordinary and compelling reason, release was unjustified when the defendant had served only about a fourth of her sentence for firearms offenses and "a reduction . . . would not reflect the gravity of the offense." Crim. No. 17-118, 2020 WL 3452984, at *3 (S.D. Miss. June 24, 2020).

### IV.    CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant's Motion for Compassionate Release (ECF No. 33) is **DENIED** without prejudice. An appropriate Order follows.

Dated: August 31, 2023

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**

14